UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KIRK LUSTER,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 12-1796-PLA<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 22, 2012, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 18, 2013, and April 18, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 26, 2013, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 28, 1965. [Administrative Record ("AR") at 93-94.] He has a tenth-grade education [AR at 194], and past relevant work as a dish washer. [AR at 191.]

On July 9, 2009, plaintiff protectively filed an application for Supplemental Security Income payments, claiming an inability to work since June 30, 2008, due to diabetes, high blood pressure, a gunshot wound in his left leg, a pin in his left hand, and mental problems, including depression, attention deficit hyperactivity disorder, bipolar disorder, and schizophrenia. [AR at 93-94, 168-71, 189-95, 217-23.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR 95-115.] A hearing was held on May 5, 2011, at which plaintiff appeared with counsel and testified on his own behalf. A medical expert and a vocational expert ("VE") also testified. [AR at 33-90.] On June 22, 2011, the ALJ found that plaintiff was not disabled. [AR at 20-28.] On September 12, 2012, the Appeals Council denied plaintiff's request for review. [AR at 1-3, 16.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since July 9, 2009, the date of the application. [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairments of schizoaffective disorder, polysubstance dependence, history of gunshot wound to left hand and left leg, status post-open reduction internal fixation of left hand with residual hardware, and diabetes. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform less than a full range of light work as defined in 20 C.F.R. § 416.967(b),[2] "that is: [plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit for six hours in an 8-hour workday with normal breaks; he can stand and/or walk for six hours in an 8-hour workday with normal breaks; he can use his non-dominant left hand for fine/gross manipulation on an occasional basis; he can [d]o simple repetitive tasks with no interaction with the public and only non-intense interaction with coworkers and supervisors; he cannot do fast paced work or work that requires hypervigilance, including be responsible for the safety of others." [AR at 23.] At step four, the ALJ concluded that plaintiff was not capable of performing any past relevant work. [AR at 26.] At step five, the ALJ found, based on the vocational expert's testimony and the application

---

[1]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]     20 C.F.R. § 416.967(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

of the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 26-27.] Accordingly, the ALJ determined that plaintiff has not been under a disability since July 9, 2009. [AR at 27.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that there are unexplained conflicts between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony that an individual with plaintiff's limitations can perform the job of counter clerk. [Joint Stipulation ("JS") at 2-6.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

**ALJ'S FAILURE TO EXPLAIN HIS DEVIATION FROM THE DOT OR OBTAIN A REASONABLE EXPLANATION FROM THE VOCATIONAL EXPERT**

Plaintiff argues that because his RFC precludes interaction with the public, fast-paced work, and hypervigilance, he would be unable to perform the job of counter clerk, the only job the ALJ relied upon at step five to conclude that plaintiff is not disabled. [JS at 3-5.] Plaintiff further contends that "[n]either the ALJ nor the VE articulated reasons for deviating from the DOT," and that the ALJ therefore erred in determining that plaintiff can perform this job. [JS at 6.]

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles." Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). The DOT raises a presumption as to job classification requirements. See Johnson, 60 F.3d at 1435. An ALJ may rely on VE testimony that varies from the DOT description of how a job is performed "only insofar as the record contains persuasive evidence to support the deviation." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (citing Johnson, 60 F.3d at 1435). Moreover, "when a VE ... provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE ... evidence and the information provided in the DOT." Social

Security Ruling[3] 00-4p. SSR 00-4p further provides that "[i]f the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Id. Nevertheless, the ALJ's failure to ask the VE about potential conflicts and obtain a reasonable explanation for any conflicts is harmless error where there is no actual conflict or where the VE has "provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi v. Astrue, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007).

In his RFC determination for plaintiff, the ALJ found that plaintiff has the ability to perform less than a full range of light work, but is precluded from interaction with the public, fast-paced work, and work that requires hypervigilance. [AR at 23.] At plaintiff's administrative hearing, the ALJ asked the vocational expert to assume a hypothetical person of plaintiff's age, education, past relevant work experience, and with all of the limitations that the ALJ determined plaintiff has, including the following limitations: "no interaction with the public," "no tasks requiring hyper-vigilance," and "no fast-paced work." [AR at 80.] When the VE was asked whether such an individual could perform jobs in the national economy other than plaintiff's past work, she first identified the job of "order clerk in food and beverage." [AR at 81.] When the ALJ reiterated, "we want no interaction with the public," the VE withdrew that job "because [it involves] telephone contact with the public." [Id.] The VE then identified the job of counter clerk, which is described at DOT No. 249.366-010. When the ALJ asked, "And that job would not involve any public interaction?" the VE testified: "No. It's working with a machine." [Id.] When the ALJ asked the VE whether her testimony was consistent with the DOT, she testified that it was. [AR at 83.] Later during the VE's testimony, plaintiff's counsel and the VE had the following two colloquies about the job of counter clerk:

    [Counsel]:        What exactly do you do as a counter clerk?

    [VE]:              A counter clerk is -- it's in photo finishing -- so it's running the film and processing up through the machine. ...

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

| | | |
|---|---|---|
| 1 | [Counsel]: | Okay. |
| 2 | [VE]: | [Inaudible.] |
| 3 | [Counsel]: | Is that always in that -- that setting -- photo finishing? |
| 4 | [VE]: | That particular one. |
| 5 | [Counsel]: | All right.  Thanks. |
| 6 | | *** |
| 7 | [Counsel]: | Is it a setting like a drug store where you have a -- like a Rite Aid where they have a photographic department versus -- |
| 8-11 | [VE]: | No.  More in -- more of a lab.  There are the one-hour ones like you see in the pharmacies or in the box stores are sort of open to the public and everybody does both the cashiering as well as that.  But this would be more in a lab where the film is sent off. |

[AR at 83-84, 88-89.]  In his decision, the ALJ relied on the VE's testimony to find that plaintiff can perform the job of counter clerk.  The ALJ therefore concluded that plaintiff can perform jobs that exist in significant numbers in the national economy and determined that plaintiff is not disabled.  [AR at 26-27.]

The Dictionary of Occupational Titles describes the job of counter clerk as follows:

> Receives film for processing, loads film into equipment that automatically processes film for subsequent photo printing, and collects payment from customers of photofinishing establishment: Answers customer's questions regarding prices and services.  Receives film to be processed from customer and enters identification data and printing instructions on service log and customer order envelope.  Loads film into equipment that automatically processes film, and routes processed film for subsequent photo printing.  Files processed film and photographic prints according to customer's name.  Locates processed film and prints for customer.  Totals charges, using cash register, collects payment, and returns prints and processed film to customer.  Sells photo supplies, such as film, batteries, and flashcubes.

DOT No. 249.366-010.

Plaintiff first contends that there is a conflict between the DOT's description of the job of counter clerk and the VE's testimony that an individual with plaintiff's limitations can perform this job because the job requires public interaction.  Plaintiff accurately notes that the DOT's description of the job of counter clerk conflicts with the VE's testimony describing this job.  DOT

7

1 No. 249.366-010 states that a counter clerk interacts with customers by answering questions, receiving film, retrieving film, and collecting payment. DOT No. 249.366-010. The VE explicitly testified, however, that the counter clerk job she identified does not involve any public interaction.

Despite the fact that there is a conflict between the DOT's description and the VE's description of the job of counter clerk, the Court finds that the VE's testimony provides sufficient support for her conclusion to justify this conflict. After the VE's initial identification of the job of counter clerk, counsel asked the VE in what type of setting this job is performed, and specifically asked whether it is performed "in a setting like a drug store." The VE responded, "No. More in -- more of a lab." She explained that while there are film processing locations that are "in the pharmacies or in the box stores ... open to the public" -- where counter clerks "do[] both the cashiering as well as [the film processing]" -- the counter clerk position she identified would be performed "in a lab where the film is sent off." In giving this testimony, the VE identified the non-public setting in which the counter clerk job she identified would be performed -- in a film processing lab. She also contrasted the setting in which the DOT's description of the job of counter clerk would be performed -- i.e., in a pharmacy or a photo development store that is "open to the public" -- with the lab setting of the counter clerk job she was identifying. The Court finds that the VE's explanation that the job of counter clerk she identified is performed in a lab setting justifies the conflict between her testimony and the DOT's description of the job of counter clerk as requiring customer interaction.[4]  See Massachi, 486 F.3d at 1154 n.19.

Plaintiff also argues that DOT No. 249.366-010 conflicts with the VE's testimony in that the job of counter clerk involves fast-paced work and may require hypervigilance. Specifically, plaintiff asserts that "[t]his work may ... [be] considered ... fast paced in that there may be a lot of customers at one time or a lot of photographs that need to be printed or a deadline to get the film and photos processed." [JS at 5.]  He also asserts that "hypervigilance is required when processing the film to make sure the photographs are printing correctly and are not being

---

    [4] For the same reason, plaintiff's contention that "if something goes wrong during the printing process and the photos become wrecked or damaged, this individual may need to deal with the customer directly to solve the problem" is rejected. [See JS at 5.]

destroyed by the printing machine." [Id.] These assertions are merely speculative. The DOT description of the job of counter clerk does not contain any indication that the nature of loading film into processing equipment is fast-paced, and if plaintiff's reasoning on this issue were valid, it could be used to preclude any job at step five for an individual precluded from fast-paced work based on the *possibility* that the job could at times be busy. Neither does DOT No. 249.366-010 include any indication that hypervigilance is needed to use the film processing equipment. Instead, the DOT describes the film processing aspects of the job as: "[r]eceives film for processing," and "[l]oads film into equipment that automatically processes film, and routes processed film for subsequent photo printing." DOT No. 249.366-010. Finally, the VE was aware of the limitations precluding fast-paced work and hypervigilance, and as noted supra, she testified that there was no conflict between the DOT and her testimony that an individual with these limitations can perform the job of a counter clerk. "A VE's recognized expertise provides the necessary foundation for his or her testimony." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Thus, plaintiff's unsupported assertions do not establish that there is any conflict between DOT No. 249.366-010 and the VE's testimony that an individual precluded from fast-paced work and hypervigilance can perform the job of counter clerk.

Based on the foregoing, the Court finds that the VE provided a sufficient explanation for her testimony, in deviation from the DOT, that an individual precluded from public interaction can perform the work of a counter clerk. The Court also finds that there was no conflict between the DOT and the VE's testimony that someone who cannot perform fast-paced work or work requiring hypervigilance can perform the job of counter clerk. Remand is not warranted. See Moncada, 60 F.3d at 523 (ALJ's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards).

/
/
/
/
/

## I.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 19, 2013

　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE